UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES ex. rel. LAWRENCE MCKINLEY, ) ) ) | |
| Petitioner, ) | No. 10 C 0787 |
| ) | |
| v. ) | Judge Ruben Castillo |
| ) | |
| DAVE REDNOUR,[1] Warden, Menard Correctional Center, ) ) ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Illinois prisoner Lawrence McKinley ("McKinley") is serving a forty-five year extended-term sentence for aggravated battery with a firearm. (R. 11, State Ct. R., Ex. H at C077.) Presently before the Court is McKinley's *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Section 2254"), which challenges the extended-term sentence imposed by a state court. (R. 1, Pet.) For the reasons stated below, McKinley's petition for writ of habeas corpus is denied.

## BACKGROUND[2]

---

[1] Dave Rednour is presently the warden at Menard Correctional Center and is substituted as the proper respondent in this matter. *See* Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts; Fed. R. Civ. P. 25(d); *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004).

[2] In reviewing a petition for habeas corpus relief pursuant to Section 2254, a court must presume that state court factual determinations are correct. 28 U.S.C. § 2254(e)(1). This presumption can be overcome where the petitioner rebuts those facts by clear and convincing evidence. *Id.* The following summary of relevant facts is therefore properly derived from the state court opinion issued by Illinois courts and is supplemented where appropriate by the appellate record submitted to the Court pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. *See Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002); *accord Rever v. Acevedo*, 590 F.3d 533, 537 (7th Cir. 2010).

McKinley was charged with one count each of attempted first-degree murder, aggravated battery with a firearm, unlawful use of a weapon by a felon, and aggravated unlawful use of a weapon by a felon. (R. 11, State Ct. R., Ex. A at 2.) At trial, McKinley's 2003 conviction for possession of a controlled substance with intent to deliver, a Class 1 felony, was used in the indictment to raise the seriousness of both unlawful use of a weapon charges to Class 2 offenses. (*Id.*) The testimony presented at McKinley's bench trial and sentencing establishes the following sequence of events.

At about 4:30 a.m. on February 27, 2005, Kevin James ("James") was sitting in his parked car smoking marijuana. (*Id.*) McKinley pulled alongside James in his car and asked James about his gang affiliation; James denied belonging to a gang. (*Id.*) McKinley then parked in front of James' automobile, got out of his car, approached James, and asked him where he obtained his marijuana. (*Id.*) After asking this question, McKinley drew a gun from his pocket. (*Id.*) In an attempt to escape, James put his car in reverse and sped away; McKinley then fired several shots at James, one of which struck James in his left leg. (*Id.*) While speeding to the hospital, James hit another car. (*Id.*) After the collision, James got out of his car and walked to a retirement home where a security guard called the police and an ambulance. (*Id.*)

The car James hit was occupied by Logan Hawkins ("Hawkins") and his wife. (*See id.*; R. 11, State Ct. R., Ex. I at W3-W6.) After James struck Hawkins' car, Hawkins followed James to the retirement home. (*See* R. 11, State Ct. R., Ex. A at 2.) When Hawkins reached the retirement home's front door, McKinley, who was still apparently chasing James, got out of a car and approached Hawkins. (*Id.*) McKinley then confronted Hawkins, accusing Hawkins of running away from him. (*Id.*) In response to McKinley's accusation, Hawkins told McKinley

2

that he was following a man who had just hit his car. (*Id.* at 2.) McKinley then drew his gun and demanded Hawkins' money. (*Id.*) After Hawkins gave him $500, McKinley sped away in his car. (*Id.*)

At approximately 5:00 a.m., Cornelius Jones ("Jones") was at a nearby gas station when he was approached by McKinley. (*Id.* at 3.) McKinley proceeded to ask Jones about his gang affiliation, then demanded Jones' earrings, watch, CD case, and money. (*Id.*) After making this initial demand, McKinley drew his gun and asked Jones if he had any other items in his car that he could give him. (*Id.*) Before this incident developed any further, police officers entered the gas station; McKinley then fled on foot. (*Id.*) Chicago police officer Anton White ("White") then chased and caught McKinley. (*Id.* at 2.) A struggle ensued, and McKinley grabbed the barrel of White's gun. (*Id.*) During their struggle, McKinley drew his gun from inside his coat, which prompted White to shoot McKinley in the torso and buttocks. (*Id.*)

The trial court found McKinley guilty of aggravated battery with a firearm and unlawful use of a weapon by a felon. (*Id.*) At his sentencing, both aggravation and mitigation evidence was presented. The state presented the testimony of Hawkins and Jones, along with certified copies of McKinley's 1999 armed robbery conviction and his 2003 drug conviction. (*Id.* at 3; R. 11, State Ct. R., Ex. I at W3-W28.) In mitigation, McKinley's father, Larry Littleton, testified that he was to blame for McKinley's behavior because he was not present during his son's childhood. (R. 11, State Ct. R., Ex. A at 3.) McKinley's brother, Lawrence Littleton, also testified and stated that he would provide McKinley with employment when McKinley was released from prison. (*Id.*)

In sentencing McKinley, the trial judge stated that he "considered the facts of this case,

matters in aggravation, mitigation, both statutory factors in aggravation and mitigation as well as the factors in aggravation and mitigation pointed out to [him] by the parties." (*Id.*, Ex. I at W42-W43.) Additionally, he found the testimony of Hawkins and Jones credible, and therefore considered their interactions with McKinley in his sentencing decision.[3] (*Id.*) Based on all the aggravating and mitigating factors, the trial judge sentenced McKinley to forty-five years for his aggravated battery with a firearm conviction; he received a concurrent sentence of thirty years for his unlawful use of a weapon conviction. (*Id.*)

McKinley subsequently filed a motion to reconsider his sentence in which he presented two arguments. (R. 11, State Ct. R., Ex. A at 4.) First, he asserted that the forty-five year term for aggravated battery with a firearm was excessive in light of his criminal background and behavior in this case. (*Id.*) Second, McKinley argued that he was subjected to improper double enhancement of his sentence for the unlawful use of a weapon conviction because his prior drug conviction was used both to raise the charge to a Class 2 offense and to sentence him as a Class X offender. (*Id.*) The trial court rejected both arguments and denied McKinley's motion for reconsideration. (*Id.*)

McKinley appealed his sentence to the Appellate Court of Illinois, First Judicial District ("state appellate court"). On appeal, McKinley again argued that he was subjected to improper double enhancement of the sentence he received for his unlawful use of a weapon conviction. (R. 11, State Ct. R., Ex. B at 13-19.) Additionally, he contended that the imposition of a forty-five year sentence was an abuse of discretion. (*Id.* at 20.) According to McKinley, the trial judge

---

[3] Following sentencing, the state moved for *nolle prosequi* in two cases against McKinley where Hawkins and Jones were the victims, as those cases were used as aggravation factors in this case. (R. 11, State Ct. R., Ex. A at 4.)

4

imposed an extended-term sentence–which was fifteen years above the six-to-thirty year sentencing range for the offense–without stating he was imposing an extended-term sentence and without specifying the basis for such a sentence. (*Id.*) Alternatively, McKinley argued that the forty-five year extended-term sentence could have been the product of a misreading of the applicable criminal statute. (*Id.*)

The state appellate court accepted McKinley's double enhancement argument, vacated McKinley's thirty year sentence, and remanded the case for a new sentencing hearing. (R. 11, State Ct. R., Ex. A at 7.) It did not, however, reverse the trial judge's imposition of an extended-term sentence. (*Id.* at 7-8.) Specifically, it found that the issues raised by McKinley had been forfeited on appeal because he failed to raise them at his sentencing hearing or in his written post-sentencing motion. (*Id.*) Further, the state appellate court rejected McKinley's argument that this claim was reviewable under the plain error doctrine. (*Id.*) Because its review of the record revealed no error, it concluded that the plain error doctrine did not apply. (*Id.*)

McKinley filed his *pro se* petition for federal habeas corpus relief on February 5, 2010. (R. 1, Pet.) In his petition, he alleges that the trial court deprived him of his rights under the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution by sentencing him to an extended-term sentence of forty-five years without stating that it was imposing a sentence above the statutory maximum for his offense or providing its reasons for

doing so.[4] (*Id.* at 47.)

## LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), habeas relief may be granted only when a state court decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Etherly v. Davis*, 619 F.3d 654, 660 (7th Cir. 2010). The statutory phrase "clearly established Federal law as determined by the Supreme Court of the United States," is a critical limitation under Section 2254(d)(1) and refers to "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision." *Washington v. Smith*, 219 F.3d 620, 627 (7th Cir. 2000) (quoting *Terry Williams v. John Taylor*, 529 U.S. 362, 412 (2000)).

"A decision is 'contrary to' federal law when the state court applied a rule that 'contradicts the governing law' set forth by the Supreme Court or if the state court reached a different outcome based on facts 'materially indistinguishable' from those previously before the Supreme Court." *Etherly*, 619 F.3d at 660 (quoting *Williams*, 529 U.S. at 405-06). On the other hand, "[a] state court unreasonably applies federal law if it identifies the correct legal principle but unreasonably applies it to the facts of the case, or if it unreasonably refuses to extend a

---

[4] On May 27, 2010, McKinley filed a letter with the Court which indicated that he was "currently filing" a state postconviction petition. (R. 12, McKinley Letter.) In this letter, he also requested that the Court hold his federal petition in abeyance while he exhausted his state remedies. (*Id.*) Despite McKinley's assurance that he was "currently filing" a state petition, the Court's inquiry into the status of this petition revealed that no such petition has been filed in the state court where he was tried. The Court will therefore not delay its disposition of McKinley's petition.

6

principle to a context in which it should apply." *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010) (citing *Williams*, 529 U.S. at 407).

To succeed on a claim predicated on Section 2254(d)'s "unreasonable application" clause, a petitioner must show that the state court's application of federal law was both incorrect and unreasonable. *Toliver v. McCaughtry*, 539 F.3d 766, 775 (7th Cir. 2008) (quoting *Raygoza v. Hulick*, 474 F.3d 958, 963 (7th Cir. 2007)). "A state court's decision is 'unreasonable' within the meaning of § 2254(d)(1) only if it is 'so erroneous as to be objectively unreasonable' and 'well outside the boundaries of permissible differences of opinion.'" *Bennett v. Gaetz*, 592 F.3d 786, 790 (7th Cir. 2010) (quoting *Emerson v. Shaw*, 575 F.3d 680, 684 (7th Cir. 2009)). Additionally, a state court decision may be considered unreasonable where it is in "tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary" as to be unreasonable. *Badelle v. Correll*, 452 F.3d 648, 655 (7th Cir. 2006) (internal quotation marks and citation omitted). Put simply, "a state court's decision 'minimally consistent with the facts and circumstances of the case' is not unreasonable[.]" *Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004) (quoting *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997)).

As a general matter, under post-AEDPA habeas law, federal courts defer to a great extent to the decisions of state courts, and review those decisions for reasonableness only. *Ben-Yisrayl v. Buss*, 540 F.3d 542, 546 (7th Cir. 2008). This deference, however, "does not imply abandonment or abdication of judicial review." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## ANALYSIS

### I. Federal constitutional claims

Respondent contends that McKinley has procedurally defaulted the federal constitutional claims he presents in his petition. (R. 10, Answer at 9.) As a threshold matter, the Court must therefore determine whether McKinley's federal claims are indeed procedurally defaulted.

A.  **Procedural default**

The procedural default doctrine normally will preclude a federal court from reaching the merits of a habeas claim when either: (1) that claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law procedural grounds; or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred. *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004) (citations omitted).

In this case, it is evident that McKinley did not present his federal claims to the state courts. "A petitioner fairly presents his federal claim to the state courts when he articulates both the operative facts and the controlling legal principles on which his claim is based. He need not cite book and verse on the federal constitution. But he must, in some manner, alert the state courts to the federal underpinnings of his claim." *Id.* at 519-20 (internal quotation marks and citations omitted). In deciding whether the state courts were so alerted, courts look to a number of factors, including: "(1) whether the petitioner relied on federal cases that engage in constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation." *Id.*

None of these factors are present in this case. McKinley did not rely on federal cases in

8

his presentation to the state appellate court, nor did he rely on state cases applying federal constitutional law. (*See* R. 11, State Ct. R., Ex. B at 20-23.) Additionally, he did not frame his claims as anything resembling a federal constitutional claim; rather, he relied on state law which requires that a state trial court set forth on the record the reasons for a particular sentence. (*Id.*) Finally, the fact pattern presented in his state court appeal is not well within the mainstream of constitutional litigation. (*Id.*) Thus, the Court finds that McKinley did not present his federal constitutional claims to a state court.

When a claim is not presented to the state courts and it is clear that they would now hold the claim procedurally barred, a federal habeas court is precluded from reaching the merits of the claim. *Perruquet*, 390 F.3d at 514. A brief review of the Illinois Post-Conviction Hearing Act (the "Act") reveals that a state court would find that McKinley's federal constitutional claims are procedurally barred under state law. This conclusion places McKinley's federal claims outside the scope of federal habeas review.

The Act provides a procedural mechanism by which criminal defendants can assert that "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 Ill. Comp. Stat. 5/122-1(a)(1). The purpose of the postconviction proceeding is to permit inquiry into constitutional issues involved in the original conviction and sentence that were not, nor could have been, adjudicated previously on direct appeal. *People v. Lucas*, 787 N.E.2d 113, 118 (2003) (citing *People v. Morgan*, 719 N.E.2d 681 (1999)). "Any issues considered by the court on direct appeal are barred by the doctrine of *res judicata*, and issues which could have been raised on direct appeal are deemed waived." *Id.* (citing *People v. West*, 719 N.E.2d 664 (1999));

9

*see People v. Erickson*, 641 N.E.2d 455, 458 (1994) ("Failure to raise a claim which could have been addressed on direct appeal is a procedural default which results in a bar to consideration of the claim's merits in a post-conviction proceeding.").

Here, it is clear that McKinley's federal constitutional claims could have been raised on direct appeal. The basis for his claims–the trial court allegedly sentencing him to an extended-term sentence without stating that it was imposing a sentence above the statutory maximum for his offense or providing its reasons for doing so–was in the record and could have served as the basis for a federal constitutional argument on direct appeal. Instead of making such an argument, McKinley based his appellate argument on a line of state cases which interpret the Illinois Unified Code of Corrections as requiring a trial court to "enumerate its consideration of the requisite aggravating factors supporting the imposition of an extended term sentence." (R. 11, State Ct. R., Ex. B at 21.) Since McKinley failed to make a federal constitutional argument he could have made on direct appeal, the Court finds that it is clear Illinois courts would now hold that McKinley's federal constitutional claims are procedurally barred under state law.[5] Accordingly, the Court finds these claims are procedurally defaulted on federal habeas review.

### B.     Cause and prejudice

The procedural default doctrine does not impose an absolute bar to federal relief. "It provides only a strong prudential reason, grounded in considerations of comity and concerns for the orderly administration of justice, not to pass upon a defaulted constitutional claim presented for federal habeas review." *Perruquet*, 390 F.3d at 514 (internal quotation marks and citations

---

[5] Under Illinois law, the "doctrine of waiver can be relaxed when fundamental fairness requires or when the facts supporting the claim are not in the original appellate record." *People v. Shum*, 797 N.E.2d 609, 616 (2003) (citation omitted). The Court finds that neither consideration would salvage McKinley's federal constitutional claims before a state court.

10

omitted). This doctrine is therefore subject to equitable exceptions. *Id.* "A procedural default will bar a federal court from granting relief on a habeas claim unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or, alternatively, he convinces the court that a miscarriage of justice would result if his claim were not entertained on the merits." *Id.* (citations omitted).

To establish cause for his default, a petitioner ordinarily must show that some external impediment blocked him from asserting his federal claim in state court. *Id.* "To establish prejudice, he 'must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* (quoting *United States v. Frady*, 456 U.S. 152 (1982)). "If the petitioner cannot show cause and prejudice but instead seeks to overcome his procedural default by establishing the prospect of a miscarriage of justice, then he must demonstrate that he is actually innocent of the crime for which he was convicted–that is, he must convince the court that no reasonable juror would have found him guilty but for the error(s) allegedly committed by the state court." *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327-29 (1995)).

The Court must give McKinley's *pro se* petition a liberal construction. *Coulter v. Gramley*, 93 F.3d 394, 397 (7th Cir. 1996) ("[I]t is important to construe pro se filings liberally."). Interpreted liberally, McKinley appears to argue that his procedural default should be excused because his trial and appellate counsel were ineffective for failing to raise any federal constitutional issues. (*See* R. 15. Traverse at 3, 5.) While ineffective assistance of counsel may be used to set aside a procedural default, this issue must have also been raised before a state court

11

to avoid procedural default. *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009). Even if the Court were to ignore the procedural default of his ineffective assistance of counsel argument (which has not been presented to a state court), he still cannot show that he received constitutionally infirm assistance at both the trial and appellate level. As a result, he has failed to establish cause for his default.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth the legal principles governing ineffective assistance of counsel claims. "Under *Strickland*, a defendant must demonstrate both that his counsel's performance was deficient when measured against prevailing standards of professional reasonableness, and that the deficient performance prejudiced his defense." *Ebert v. Gaetz*, 610 F.3d 404, 411 (7th Cir. 2010) (citing *Strickland*, 466 U.S. at 689-92). To be considered deficient, representation must fall below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. With respect to the prejudice requirement, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "[A] court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id.* at 696. When challenging his sentence, a defendant must show that but for trial counsel's errors, there is a reasonable probability that he would have received a different sentence. *Griffin v. Pierce*, No. 09-3138, 2010 WL 3655899, at *12 (7th Cir. Sept. 22, 2010) (citing *Strickland*, 466 U.S. at 695). A court "need not address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 446 U.S. at 697. Thus, if a defendant fails to

12

demonstrate prejudice, a court can dispose of his claim without evaluating his counsel's performance. *See id.*

McKinley has failed to show that he was prejudiced by his trial and appellate counsel's failure to raise any federal constitutional objections to the imposition of an extended-term sentence. The record reveals that there is no reasonable probability that the outcome of his sentencing proceeding or his appeal would have been any different had his counsel raised a federal constitutional issue. Put simply, there is no federal constitutional right, under either the Due Process or Equal Protection Clauses, to have a state trial judge specifically articulate the basis for a lawful sentence.[6] While the trial judge's failure to specifically state the basis for his sentencing decision may raise issues under state law, *People v. Brown*, 764 N.E.2d 562, 572 (Ill. App. Ct. 1992), this failure does not implicate any federal constitutional rights. Accordingly, the failure to raise any federal constitutional issues did not prejudice McKinley.[7] The absence of prejudice dooms his ineffective assistance of trial and appellate counsel arguments.[8] Without them, McKinley cannot establish cause for the procedural default of his federal constitutional claims. This conclusion leaves the Court unable to review the merits of McKinley's federal

---

[6] Such a right also does not exist under the Sixth, Eighth, or Ninth Amendments.

[7] McKinley also suggests that the state court decisions were based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceedings." (R. 1, Pet. at 49.) He fails, however, to present the clear and convincing evidence needed to unsettle the presumption of correctness attached to a state court's factual determinations on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). This contention, therefore, is unavailing.

[8] McKinley also attempts to overcome his procedural default by establishing the prospect of a miscarriage of justice. (R. 15, Traverse at 7.) To show a miscarriage of justice, he must convince the Court that no reasonable juror would have found him guilty but for the error allegedly committed by the state court. *Perruquet*, 390 F.3d at 514. Here, McKinley does not claim he is actually innocent; his miscarriage of justice argument is therefore unconvincing.

13

constitutional claims.

As a final matter, the Court notes that McKinley's extended-term sentence is legal under state law. In Illinois, a trial court need only find a single required factor in aggravation to impose an extended-term sentence. *E.g., People v. McGhee*, 605 N.E.2d 1039, 1051 (Ill. App. Ct. 1992). Here, such a factor was present in the form of McKinley's 1999 armed robbery conviction, which was introduced at the end of the state's aggravation case. (R. 11, State Ct. R., Ex. I at W28.) This conviction, which was a Class X felony, (R. 11, State Ct. R., Ex. H at 34), can be used as the basis for an extended-term sentence for his aggravated battery with a firearm conviction, which is also a Class X felony. *See* 730 Ill. Comp. Stat. 5/5-5-3.2(b)[9]; 720 Ill. Comp. Stat. 5/12-4.2(b). Given the extendable nature of McKinley's aggravated battery with a firearm conviction, his forty-five year sentence is well within the thirty-to-sixty year range for an extended-term Class X felony. *See* 730 Ill. Comp. Stat. 5/5-4.5-25(a). While the trial judge's statement that he considered the "statutory factors in aggravation and mitigation," (R. 11, State Ct. R., Ex. I at W42), could have been a bit more precise in setting forth the basis for imposing an extended-term sentence, this lack of precision does not implicate any federal constitutional rights.

## II. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a

---

[9] The relevant statutory language reads as follows: "The following factors, related to all felonies, may be considered by the court as reasons to impose an extended term sentence under Section 5-8-2 upon any offender (1) When a defendant is convicted of any felony, after having been previously convicted in Illinois or any other jurisdiction of the same or similar class felony, when such a conviction has occurred within 10 years after the previous conviction, excluding time spent in custody, and such charges are separately brought and tried and arise out of different set of acts[.]" 730 Ill. Comp. Stat. 5/5-5-3.2(b).

final order adverse to the applicant." Accordingly, the Court must determine whether to grant McKinley a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in this order.

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition; instead, he must first request a certificate of appealability. *See Miller-El*, 537 U.S. at 335. A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Evans v. Circuit Court of Cook Cnty., Ill.*, 569 F.3d 665, 667 (7th Cir. 2009). Under this standard, McKinley must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). In cases where a district court denies a habeas claim on procedural grounds, the Court should issue a certificate of appealability only if the petitioner shows that (1) "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," and (2) "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

In this case, the Court concludes that jurists of reason would not find it debatable whether McKinley's petition states a valid claim of the denial of a constitutional right. As discussed above, the trial judge's failure to clearly articulate his basis for imposing a lawful extended-term sentence does not constitute a cognizable federal constitutional claim. Further, jurists of reason would not find the Court's procedural default conclusion debatable. Accordingly, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For the reasons stated herein, McKinley's petition for habeas corpus (R. 1) is DENIED. The Clerk of the Court is directed to enter a final judgment against petitioner. Additionally, the Court will not issue a certificate of appealability from this final judgment for the reasons stated above.

Entered: /s/ Ruben Castillo

**Judge Ruben Castillo**
**United States District Court**

**Dated:** December 9, 2010